## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| INYX USA, LTD., | : | Case No. 07-10888 (KG) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

### NOTICE OF APPEAL

Pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001,

Dr. Jack Kachkar, a creditor and party-in-interest ("Appellant"), by and through his undersigned

counsel, hereby appeals to the United States District Court for the District of Delaware from an

Order of the Bankruptcy Court titled "Final Order (I) Authorizing the Use of Cash Collateral

Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Westernbank Puerto Rico as

the Prepetition Lender, (III) Authorizing Further Postpetition Financing, (IV) Granting Liens and

Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 363 and 364, and (V)

Modifying Automatic Stay Pursuant to 11 U.S.C. § 362," signed and entered in the above-

captioned bankruptcy case on the 3rd day of April, 2008 [D.I. 121] (the "Order").

The names of all parties to the Order appealed from and the names, addresses, and

telephone numbers of their respective attorneys are as follows:

| **Party** | **Attorneys:** |
| --- | --- |
| **APPELLANTS:** | **Dr. Jack Kachkar** |

*Represented By:*

Tobey M. Daluz, Esquire
Leslie C. Heilman, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465

**APPELLEES:**            **Stephen S. Gray,**
**Chapter 11 Trustee for Inyx USA, Ltd.**

*Represented By:*

Bruce Grohsgal, Esquire
Pachulski Stang Ziehl & Jones, LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100

**Westernbank Puerto Rico**

*Represented By:*

Francis A. Monaco, Esquire
Steven K. Kortanek, Esquire
Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rich, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4340

-and-

Harvey P. Miller, Esquire
Weil, Gotshall & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000

2

Dated:  April 14, 2008
Wilmington, Delaware

Respectfully submitted,

/s/ Tobey M. Daluz
Tobey M. Daluz (No. 3939)
Leslie C. Heilman, Esquire (No. 4716)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone:  (302) 252-4465
Facsimile:  (302) 252-4466
Email:  daluzt@ballardspahr.com
        heilmanl@ballardspahr.com

Counsel for Dr. Jack Kachkar

3

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | Case No. 07-10888 (KG) |
| INYX USA, LTD. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | Related Docket Nos. 72, 82 and 95 |

### FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO WESTERNBANK PUERTO RICO AS THE PREPETITION LENDER, (III) AUTHORIZING FURTHER POSTPETITION FINANCING, (IV) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 363 AND 364, AND (V) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

THIS MATTER having come before the Court upon the motion (the "**Motion**")

dated February 29, 2008 by Stephen S. Gray, as the Chapter 11 Trustee (the "**Trustee**")

of Inyx USA, Ltd. ("**USA**" or the "**Debtor**") seeking entry of an interim and final order

(this "**Order**") authorizing the Trustee to:

(i)        Obtain credit from Westernbank Puerto Rico ("**Westernbank**") and incur

debt, pursuant to sections 364(c) and 364(d) of title 11 of the United States Code, as

amended (the "**Bankruptcy Code**"), for a period from March 1, 2008[1] through and

---

[1] To the extent funds borrowed or available to be borrowed by the Trustee under: the Final Order as to Debtor Inyx USA, Ltd. (07-10888) (I) Authorizing the Use of Cash Collateral (II) Granting Adequate Protection to Westernbank Puerto Rico as the Prepetition Lender, (III) Authorizing Postpetition Financing, (IV) Granting Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 363 and 364, and (V) Modifying Automatic Stay, dated September 7, 2007 (Docket No. 179 in case no. 07-10887(KG)) (the "First Financing Final Order"); the Interim Order as to Debtor Inyx USA, LTD. (Case No. 07-10888) (I) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Westernbank Puerto Rico as the  Prepetition Lender, (III) Authorizing Second Postpetition Financing, (IV) Granting Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 363 and 364, and (V) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362 and (VI) Scheduling a Final Hearing, dated December 6, 2007 (Docket No. 420 in case no. 07-10887(KG)) (the "Second

including May 31, 2008 (the "**Commitment Termination Date**"),[2] up to the total aggregate amount set forth in the Budget, hereinafter defined (the "**Loan**"), and the proceeds of the Loan shall be used in a manner consistent with the terms of this Order and the Budget annexed hereto as Exhibit A (the "**Budget**"), solely for (a) the Trustee's working capital and general corporate purposes in the Trustee's operation and management of the business of USA, and (b) payment of costs of administration of the chapter 11 case of USA (the "**Case**") to the extent allowed by the Court, and the repayment of which shall be collaterally secured by first priority perfected liens (as defined in section 101(37) of the Bankruptcy Code) and security interests, referred to and defined in more detail herein as the "**Financing Liens**"), on all property of the Debtor's estate pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and with priority, as an administrative expense in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

    (ii)    Grant to Westernbank, in accordance with sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, first priority perfected liens upon all of the property and assets of the Debtor's estate, real and personal, tangible and intangible, whether now

---

Financing Order"); and the interim orders entered on the Motion (Docket Nos. 82 and 95 in case no. 07-10888) (the "Interim Orders"), remain unused or have not yet been borrowed, the Trustee is authorized by this Order to use such funds prior to the Commitment Termination Date (defined below) in accordance with the budget attached as Exhibit A.

[2] Upon request of the Trustee, the Commitment Termination Date may be extended by Westernbank, in Westernbank's sole discretion, through April 30, 2008 and May 31, 2008 and the amount of the loan authorized by the Final Order shall be increased to reflect an agreed upon budget through each such month, respectively (each a "**Monthly Budget**") by the filing of the Monthly Budget on the docket of the Case (as defined below), in which event all of the terms and conditions of the Order will apply in addition to the Monthly Budget.

owned or hereafter acquired or arising and regardless of wherever located to the extent hereinafter set forth (the "**Lender's Collateral**");

(iii)    Grant to Westernbank, in accordance with section 364(c)(1) of the Bankruptcy Code, superpriority administrative claim status in respect of any and all money borrowed by the Trustee pursuant to this Order;

(iv)    Use Cash Collateral (as defined in section 363(a) of the Bankruptcy Code) of Westernbank Puerto Rico, as prepetition lender (the "**Prepetition Lender**"), under that certain Loan and Security Agreement, dated as of March 31, 2005, among the Prepetition Lender, Inyx, Inc. and USA (the "**Prepetition Credit Agreement**"), pursuant to section 363(c)(2) of the Bankruptcy Code, on an interim basis for a period from March 1, 2008 through and including the Commitment Termination Date, on terms and conditions more fully described herein and in a manner consistent with the Budget;

(v)    Grant to the Prepetition Lender, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, as adequate protection for the use, and to the extent of any diminution in the value, of Cash Collateral, replacement liens on all of the Debtor's estate's currently owned or after-acquired property and proceeds thereof *pari passu* to the Financing Liens and subject to other liens permitted under the Prepetition Credit Agreement (the "**Prepetition Liens**"), without waiver of any party's right to challenge the extent, priority or validity of the Prepetition Liens; and

(vi)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order.

3

The Court having reviewed the Motion and considered the relief requested by the Trustee, and all of the proceedings had before the Court, including any evidence submitted at the March 5 and March 12, 2008 hearings on the Interim Orders and at the April 1, 2008 hearing on this Order (the " **Final Hearing**"), and it appearing that the financing contemplated by this Order is critical and essential to the Trustee's administration of the USA estate and to avoid immediate and irreparable harm to the Trustee's administration of the USA estate; and it appearing due and proper notice of the Trustee's Motion and the hearings on the Interim Orders and the Final Hearing having been given, in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and it further appearing that the Trustee is unable to obtain unsecured credit or secured credit under section 364(c) of the Bankruptcy Code; and all objections, if any, to the entry of this Order having been withdrawn, resolved or overruled by the Court; and upon all pleadings filed with this Court, and all proceedings held before the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition Date. On July 2, 2007 (the "**Petition Date**"), USA filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. The Court's order directing the joint administration of the USA case with the chapter 11 case of Exaeris, Inc. was entered on July 12, 2007, and was vacated by the Court on December 6, 2007.

B.      Trustee. On August 7, 2007, this Court appointed Stephen S. Gray as chapter 11 trustee of USA. The Trustee has qualified under section 322 of the Bankruptcy Code and has posted a bond in favor of the United States as required by the order of his appointment.

C.      Jurisdiction and Venue. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Trustee's Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceedings on the Trustee's Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Committee Formation. A statutory committee of unsecured creditors was appointed on February 14, 2008 (the "**Committee**").

E.      Interim Orders. On March 5, 2008 the Court entered the first Interim Order, and on March 12, 2008 the Court entered the second Interim Order, authorizing the Trustee to obtain credit from Westernbank through and including March 31, 2008.

F.      Notice. Notice of the Final Hearing and the relief requested in the Trustee's Motion has been provided by the Trustee, whether by telecopy, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Securities and Exchange Commission, (iii) the Internal Revenue Service, (iv) the attorneys for Westernbank, (v) the attorneys for Inyx, Inc., (vi) the attorneys for Jack Kachkar, (vii) counsel to the Committee, and (viii) any party which has filed a request for notices with this Court prior to the date of the Trustee's Motion. Under the circumstances, such notice of the Hearing and the relief requested in the Trustee's Motion constitutes due and sufficient notice and complies with

5

sections 102(1), 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001(c).

      G.     Good Faith. The use of Cash Collateral and the borrowing provided in this Order was negotiated in good faith and at arms' length between the Trustee and Westernbank. That credit to be extended under this Order will be extended in good faith, and for valid business purposes and uses, the consequence of which is that Westernbank is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

      NOW, THEREFORE, It Is Ordered that:

      1.     Motion Granted. The relief requested in the Motion is granted in all respects on the terms and conditions set forth herein.

      2.     Authorization to Borrow.

      (a)     The Loan. The Trustee is hereby authorized to request extensions of credit under the Loan up to the total aggregate amount of set forth in the Budget through the Commitment Termination Date, upon presentation to Westernbank of a request for borrowing certified by the Trustee and in accordance with Paragraph 2(e) hereof, for use solely in accordance with the Budget, and Westernbank will make such advances of the Loan in the amounts set forth in the Budget, pursuant to the terms of this Order. Westernbank is under no obligation whatsoever to provide any funding in excess of the amounts approved in this Order, and Westernbank may, in its sole and absolute discretion and without further notice to the Court or any other party, determine not to fund any amount in excess of the amounts approved herein. The Loan shall bear interest on the unpaid principal amounts thereof from and after such loans are made at a *per annum* rate equal to the sum of (i) the Base Rate (as defined below) as in effect from time to time and

6

(ii) 0.5% *per annum*. The Base Rate means, for any period, a fluctuating interest rate as shall be in effect from time to time, which rate shall be equal at all times to the rate of interest quoted from time to time by The Wall Street Journal as the "base rate on corporate loans posted at 75% of the nation's 30 largest banks."

    (b)    <u>Postpetition Liens</u>. Effective immediately upon the execution of this Order, Westernbank is hereby granted, pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition liens upon and security interests in the Lender's Collateral (collectively, the **"Financing Liens"**) senior and superior in priority to all other secured and unsecured creditors of the Debtor's estate as provided in Paragraph 2(c) hereof, excluding any causes of action of the Trustee or the USA estate (1) arising under chapter 5 of the Bankruptcy Code, (2) against the officers and directors of USA, and (3) any action filed by the Trustee or by or on behalf of the Debtor against Westernbank or USA's officers and directors or the proceeds thereof.

    (c)    <u>Lien Priority</u>. The Financing Liens created and granted to Westernbank pursuant to this Order (1) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (2) are first priority, valid, perfected, non-avoidable, and superior to any security, mortgage, or collateral interest or lien or claim against the estate and assets of USA, and (3) shall collaterally secure all obligations of the Trustee and the USA estate pursuant to this Order, inclusive of reasonable fees and expenses incurred by Westernbank in connection with the negotiation of financing of the Trustee's administration and the Loan and this Order. The Financing Liens are not and shall not be made subject to or *pari passu* with any lien or security interest by any court order

heretofore or hereafter entered in the Case and shall be valid and enforceable against any other or subsequent trustee appointed in the Case, or upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of the Case; *provided, however,* that the Financing Liens shall be (x) subject and subordinate to the liens granted under the Kachkar DIP (as defined below) on (1) unencumbered property of the Debtor's estate as of July 11, 2007, if any, or (2) property acquired after the Petition Date and prior to August 16, 2007 by USA or the Trustee from funds used for USA's direct benefit provided under the postpetition financing extended to the Debtor pursuant to the Bankruptcy Court's Interim Order dated July 11, 2007 (the "**Kachkar DIP**"), if any, and (y) *pari passu* with the "Financing Liens" (as such term is utilized in the First Financing Final Order) granted to Westernbank under the First Financing Final Order. The Financing Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

(d)     <u>Superpriority Administrative Claim Status</u>. All obligations owing to Westernbank on account of the Loan shall be allowed superpriority administrative expense claims (the "**Superpriority Claim**" and, together with the Financing Liens, the "**Financing Protections**") with priority in accordance with sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Trustee, the Debtor and the Debtor's estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726(b),

1113, and 1114 of the Bankruptcy Code, *provided, however*, the claims under the Loan shall be (x) subject and subordinate to any allowed claims arising from the Kachkar DIP, solely to the extent that proceeds of the Kachkar DIP were advanced to USA or for and to the extent of the direct benefit of USA, and not in connection with any loans and advances made by Kachkar to or for the benefit of Exearis, Inc., *provided, further,* that nothing contained herein or otherwise shall limit the ability of the Trustee, Debtor or Westernbank to challenge the Kachkar DIP on any and all grounds, including validity, priority and obligation, and *provided, further,* that the Superpriority Claim shall not extend to the proceeds of any causes of action of the Trustee or the USA estate (1) arising under chapter 5 of the Bankruptcy Code, (2) against the officers and directors of USA, and (3) any action filed by the Trustee or by or on behalf of the Debtor against Westernbank, and (y) equal in priority with the "Superpriority Claim" (as such term is utilized in the First Financing Final Order) granted to Westernbank under the First Financing Final Order. No costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the Financing Protections or with any other claims of Westernbank arising hereunder; *provided that*, notwithstanding the foregoing and to the extent set forth in the Budget, Westernbank shall provide up to the amounts set forth in the Budget from the proceeds of the Loan to fund the allowed costs and expenses of the Trustee and his professionals (without regard to when allowed and without regard to whether the Commitment Termination Date has occurred) without prejudice to the rights of all parties

9

to object to applications for allowance of fees and reimbursement of expenses and the

Trustee and all professionals shall be required to file fee applications as required under

Bankruptcy Code, Bankruptcy Rules and local rules.

(e)    Funding Mechanics. The Trustee (or its designated representative) shall

submit any and all requests for borrowing to Westernbank on a weekly basis, in advance.

Each request for borrowing shall (i) be in writing, (ii) be signed by the Trustee, (iii)

contain a statement by the Trustee setting forth (x) the specific amounts requested and (y)

the corresponding use of fund authorized under the Budget, and (iv) be received by

Westernbank via facsimile and email no later than 3 full business days prior to the time

on which such funding is sought (a "**Funding Request**"). Westernbank will make such

advances of the Loan in the amounts set forth in the Budget, but has no obligation to fund

any amounts if the Funding Request does not (i) comply with the provisions hereof, (ii)

does not comport with the uses set forth in the Budget, or (iii) the amounts sought exceed

the specific amounts set forth in the Budget for each use, provided that a Funding

Request may request advances for amounts set forth in the Budget for prior periods but

not previously advanced, and Westernbank will fund such amounts, and further provided

that Westernbank shall fund promptly upon the allowance thereof, the Chapter 11 Fees,

Chapter 11 Trustee Fees and Professional Fees including those that are accrued and

unpaid on the Commitment Termination Date or any earlier termination of the Loan

(notwithstanding the occurrence or alleged occurrence of an Event of Default, the

Commitment Termination Date or such earlier termination of the Loan).

3.    Postpetition Lien Perfection. This Order shall be sufficient and conclusive

evidence of the validity, perfection, and priority of the Financing Liens without the

10

necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the Financing Liens or to entitle Westernbank to the priorities granted herein. Notwithstanding the foregoing, Westernbank may, in its sole discretion, file such financing statements, mortgages, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Case. The Trustee shall execute and deliver to Westernbank all such financing statements, mortgages, notices and other documents as Westernbank may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the Financing Liens granted pursuant hereto. Westernbank, in its discretion, may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which USA has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order.

4.     Use of Cash Collateral and Adequate Protection.  Pursuant to this Order, the Prepetition Lender is granted, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, as adequate protection for the use of Cash Collateral, and to the extent of any diminution in the value thereof, replacement liens to the same extent and validity and priority as the Prepetition Liens on all of the Debtor's estate's currently owned or

after-acquired property and proceeds thereof *pari passu* with and having the same priority as the Financing Liens and subject to other liens permitted under the Prepetition Credit Agreement. The Trustee is hereby authorized to use Cash Collateral for use in accordance with the Budget.

5.      Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against Westernbank, its claims, or the Lender's Collateral, pursuant to sections 105, 506(c) or 522 of the Bankruptcy Code, or otherwise, without the prior written consent of Westernbank, and no such consent shall be implied from any other action, inaction, or acquiescence by Westernbank, provided that Westernbank shall pay the amounts set forth in the last sentence of paragraph 2(e) of this Order.

6.      Proceeds of Subsequent Financing.  If at any time prior to the repayment in full of all obligations arising under the Loan or the financing authorized under the First Financing Final Order, including subsequent to the confirmation of any plan with respect to the Debtor's estate, the Trustee or any other trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to Westernbank in pro rata *pari passu* reduction of the obligations under the Loan and the obligations incurred by the Trustee to Westernbank under the First Financing Final Order. To the extent the terms of this Paragraph are inconsistent with the terms set forth in Paragraph 6 of the First Financing Final Order, Westernbank, by extending credit under the Loan, consents that the terms of this Paragraph 6 shall govern.

12

7.     Commitment Termination.  Repayment of the Loan shall be due and payable on the Commitment Termination Date and, effective as of that date, the use Cash Collateral shall cease.

8.     Modification of Automatic Stay.  For purposes of this Order and Westernbank's exercise of any and all of its remedial rights, the automatic stay imposed by section 362(a) of the Bankruptcy Code shall be vacated and modified.

9.     Payment from Proceeds of Collateral.  Net proceeds of all Lender's Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions of Lender's Collateral, whether or not in the ordinary course) will be applied as follows: (a) first, to permanently reduce the obligations to Westernbank under the Loan, (b) second, to permanently reduce the obligations to Westernbank under the Second Financing Order, (c) third, to permanently reduce the obligations to Westernbank incurred under the First Financing Final Order, (d) fourth, to satisfy provisionally (subject to disgorgement) claims of the Prepetition Lender for adequate protection, and (e) fifth, to reduce provisionally (subject to disgorgement) the amounts due under the Prepetition Credit Agreement (subject to the determination of the Prepetition Lender's non-avoidable claim and lien and the extent and priority of any such lien).

10.    Events of Default.  Westernbank shall have no obligation to make any extension of credit upon the occurrence of any of the following "Events of Default" under this Order:

> (1)            Failure by the Trustee or USA to comply with any material term of this Order;

13

(2)              Failure by the Trustee or USA to comply with the Budget;

(3)              The use of any Loan proceeds (i) other than in the manner set forth in the Budget and each Funding Request, and (ii) that exceeds the amount set forth in the Budget for any such expenditure by more than 10% (after application of the cumulative expenditure provision with respect to budgeted but not previously advanced amounts set forth in the last sentence of Paragraph 2(e) of this Order;

(4)              This Order shall, for any reason, cease to create a valid lien on any of the Lender's Collateral purported to be covered hereunder or thereunder or such lien shall cease to be a perfected lien having the priority provided herein pursuant to section 364(d) of the Bankruptcy Code against the Trustee or Debtor's estate, or the Trustee shall so allege in any pleading filed in any court;

(5)              The Case shall be dismissed (or the Bankruptcy Court shall make a ruling requiring the dismissal of the Case), suspended or converted to a case under chapter 7 of the Bankruptcy Code, or the Trustee shall file any pleading requesting any such relief; or an application shall be filed by the Trustee for the approval of, or an order shall be entered (i) allowing any other claim having priority senior to or *pari passu* with the claims of Westernbank granted hereunder or any other claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code (other than in an application for further financing provided by Westernbank or claims existing on the date hereof) or (ii) granting any lien on the Lender's Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in this Order (other than in an application for further financing provided by Westernbank);

(6)              The Trustee or USA shall seek to, or shall support, any motion to disallow in whole or in part Westernbank's claim in respect of the obligations under the Loan or to challenge the validity and enforceability of the liens in favor of Westernbank.

(7)              Failure to execute a contract for sale ("**Sale**") of all or substantially all of the assets of USA (the "**Assets**"), subject to Court approval, in a reasonable period of time as determined by Westernbank;

(8)        Execution of any agreement with respect to the Sale of the Assets that is not satisfactory to Westernbank;

(9)        Failure to enter into a relationship with Aeropharm Technology, LLC satisfactory in form and substance to Westernbank in its sole discretion by April 30, 2008 (the **"Aeropharm Contract"**), which deadline may be extended by Westernbank in its sole discretion;

(10)        Termination of the Aeropharm relationship by the Trustee;

(11)        The plant manager and other executives of the Debtor not being reasonably acceptable to Westernbank;

(12)        Failure to promptly accept an offer to purchase the Assets which is acceptable to Westernbank and does not otherwise violate the Trustee's fiduciary duties; or

(13)        Failure to pay all postpetition indebtedness to Westernbank contemporaneous with closing of Sale of Assets.

11.    <u>Immediate Action.</u>  Immediately upon the occurrence of any Event of Default, Westernbank may immediately cease, terminate or reject any and all funding requests and take any other action consistent with this Order. The Loan and the financing authorized under the First Financing Final Order and the Second Financing Order then shall be due and payable and the use of Cash Collateral shall cease without the requirement of any further order of this Court or notice to any party or any other action.

12.    <u>Other Rights and Obligations.</u>

(a) <u>Good Faith Under Section 364(e) of the Bankruptcy Code.</u> Based on the findings set forth in this Order and the proceedings held before the Court and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, Westernbank is entitled to the protections provided in

section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or lien or priority authorized or created hereby.

(b) <u>Binding Effect</u>. The provisions of this Order shall be binding upon and inure to the benefit of the Prepetition Lender, Westernbank, the Trustee, USA and their respective successors and assigns (including any subsequent or other trustee or other fiduciary hereinafter appointed as a legal representative of USA or with respect to the property of its estate) whether in the Case, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

(c) <u>No Waiver</u>. The failure of the Prepetition Lender or Westernbank to seek relief or otherwise exercise its rights and remedies under this Order, as applicable, shall not constitute a waiver of any of the rights of the Prepetition Lender or Westernbank hereunder, thereunder, or otherwise. Except as provided herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (1) the rights of the Prepetition Lender or Westernbank under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Lender or Westernbank to request conversion of the Case to a case under Chapter 7 or dismissal of the Case or (2) any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Lender or Westernbank.

(d) <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

16

(c) <u>No Marshaling</u>.  Westernbank shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Lender's Collateral.

(f) <u>Section 552(b)</u>.  The Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Westernbank Puerto Rico with respect to proceeds, product, offspring or profits of any of its collateral.

(g) <u>Survival of Order</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (1) confirming any plan of reorganization in the Case, (2) converting the Case to a case under chapter 7 of the Bankruptcy Code, or (3) dismissing the Case, and the terms and provisions of this Order, including, but not limited to, the adequate protection and Financing Protections granted hereunder, shall continue in full force and effect notwithstanding the entry of such order, and such adequate protection and Financing Protections shall retain their effect as provided by this Order until all the obligations of the Trustee pursuant to this Order are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in this Order which survive such discharge by its terms).  The adequate protection obligations and the obligations to Westernbank on account of the Loan shall not be discharged by the entry of an order confirming a Plan, the Trustee having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

(h) <u>Enforceability</u>. This Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof.

(i) <u>Objections Overruled</u>. All objections, if any, to the Trustee's Motion to the extent not withdrawn or resolved, hereby are overruled, provided that any party in interest may raise the same or other objections to the Order or any subsequent financing order sought in these cases.

(j) <u>All Rights Preserved</u>. The rights of any party in interest with respect to any and all claims, defenses and objection relating to Jack Kachkar, USA's officers and directors and Westernbank are not in any way waived or modified by entry of this Order and are specifically preserved.

(k) <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Order according to its terms

Dated: April 3, 2008
      Wilmington, Delaware

                                   _____
                                   The Honorable Kevin Gross
                                   United States Bankruptcy Judge

<u>EXHIBIT A</u>

BUDGET

ImX USA
Projected Results of Operations and Cash Flow

(in 000s)

STATEMENT OF CASH FLOWS

| Week --> | 7-Mar | 14-Mar | 21-Mar | 28-Mar | 4-Apr | 11-Apr | 18-Apr | 25-Apr | 2-May | 8-May | 16-May | 23-May | 30-May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Net Sales | $0.0 | $458.0 | $90.0 | $453.0 | $0.0 | $0.0 | $745.0 | $254.5 | $0.0 | $326.5 | $326.5 | $90.0 | $0.0 | $3,799.5 |
| Operating Cash Balance | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 | $100.0 |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Armacord Collections | 897.0 | | | | | 1,354.3 | | 326.0 | 653.0 | 673.5 | | 328.5 | 326.5 | 5,011.5 |
| HPA & Non-Production Testing Collections | | | 92.0 | | | | 80.0 | | | | | 90.0 | | 270.0 |
| Total Cash Receipts | 897.0 | | 92.0 | | | 1,354.3 | 90.0 | 328.0 | 653.0 | 673.5 | | 418.5 | 326.5 | 5,341.5 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll & Payroll Taxes | 36.0 | 184.0 | 36.0 | 164.0 | 36.0 | 164.7 | 36.7 | 164.7 | 36.7 | 164.7 | 36.7 | 184.7 | 36.7 | 1,284.9 |
| Fel Overtime | | | | | | 29.0 | 30.0 | 29.0 | | 20.0 | 30.0 | | | 100.0 |
| Pension, Saving Plan, Group Insurance | 45.0 | 7.8 | | 7.8 | 45.0 | 7.6 | | 7.8 | 19.5 | 51.6 | 7.8 | 7.8 | 26.7 | 181.7 |
| Lab Services, Calibration & Software | 14.1 | 21.5 | 6.5 | 13.3 | 12.4 | 21.5 | 8.2 | 6.5 | 8.9 | 19.1 | 18.3 | 9.5 | | 196.8 |
| Plant Expenses | 32.9 | 32.9 | 31.1 | 30.4 | 32.9 | 31.1 | 31.1 | 32.9 | 32.9 | 23.6 | 38.6 | 28.6 | 10.3 | 405.7 |
| Health & Safety (Including Wastes Disposal) | 18.0 | 10.2 | 138.3 | 10.2 | 9.0 | 10.2 | 8.3 | 10.2 | 6.3 | 4.0 | 13.2 | 3.3 | 26.1 | 250.4 |
| Diesel & Utilities | 176.0 | 4.0 | 16.0 | | 176.0 | 4.3 | 16.0 | 16.0 | 16.0 | 192.0 | 20.0 | | 16.2 | 610.0 |
| Insurance | | 255.0 | | | 75.0 | | 75.0 | | 75.0 | | | | 16.0 | 375.0 |
| All Other (General) & Administration | 16.6 | 7.8 | 3.8 | 4.3 | 18.6 | 7.8 | 3.8 | 4.3 | 4.3 | 16.3 | 5.8 | 4.3 | 8.1 | 101.4 |
| Total Operating Disbursements | 358.5 | 473.3 | 225.6 | 225.3 | 403.8 | 367.1 | 135.0 | 222.1 | 191.8 | 633.5 | 184.8 | 213.1 | 119.4 | 3,425.1 |
| Operating Cash Flow | 537.5 | (473.3) | (136.6) | (225.3) | (403.8) | 1,066.9 | (43.0) | 105.9 | 461.4 | 220.0 | (115.8) | 205.4 | 207.1 | 1,456.2 |
| Accumulated | 557.5 | 119.7 | (249.3) | 179.8 | (224.0) | 982.5 | 819.9 | 925.7 | 1,387.2 | 1,607.2 | 1,455.6 | 1,849.1 | 1,542.2 | |
| **Other (Sources) / Uses** | | | | | | | | | | | | | | |
| Hexel - Line of Credit (DIP) | | | | | | | | | | | | | | |
| Advances - Line of Credit (Post-petition) | (2,338.1) | (568.5) | (299.3) | (305.5) | (458.0) | (947.2) | (209.1) | (306.9) | (299.4) | (538.2) | (238.5) | (291.6) | (195.0) | (8,279.7) |
| Repayments - Line of Credit (Post-petition) | 897.0 | | 92.0 | 653.0 | 653.0 | 1,354.0 | 80.0 | 328.0 | 653.0 | 673.8 | | 418.5 | 326.5 | 5,281.5 |
| Post-petition Exp Funded under prior DIP ending 2/28 | | | | | | | | | | | | | | |
| Post-petition Advanced Unpaid Professional Fees (1) | 1,814.3 | 16.3 | 8.7 | 8.9 | 14.2 | 13.1 | 6.1 | 8.6 | 7.8 | 15.7 | 6.8 | 8.5 | 5.7 | 1,814.3 |
| Charter 11 Trustee Fees (1) | 12.0 | | | | | | | | | | | | | 130.1 |
| Professional Fees (Trustee's Counsel) (1) | 40.0 | 40.0 | 42.0 | 40.0 | 40.0 | 45.0 | 40.0 | 40.0 | 43.0 | 15.7 | 40.0 | 40.0 | 40.0 | 520.0 |
| Professional Fees (CPO'S Partner) (1) | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.3 | 330.0 |
| Professional Fees (Creditor's Committee) (1) | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | |
| Total Other (Sources) / Uses | 557.5 | (473.2) | (126.6) | 436.1 | (403.8) | 1,066.9 | (43.0) | 105.9 | 461.4 | 220.0 | (115.8) | 203.4 | 207.1 | 1,456.2 |

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

**APPEAL TRANSMITTAL SHEET**

Case Number:  __07-10888KG_____   ◉ BK   ○ AP

    If AP, related BK Case Number: _____

Title of Order Appealed:

  Order (Final) _____

       Docket Number: __121_____   Date Entered: __4/3/08_____

Item Transmitted:   ◉ Notice of Appeal           ○ Motion for Leave to Appeal
                  ○ Amended Notice of Appeal   ○ Cross Appeal
           Docket Number: __127_____   Date Filed: __4/14/08_____

*Appellant/Cross Appellant:

Dr. Jack Kachkar _____

Counsel for Appellant:

  Tobey M. Daluz, Esquire _____ ▪

  Leslie C. Heilman, Esquire _____ ▪

  Ballard Spahr Andrews & Ingersoll, LLP ___ ▪

  919 North Market Street, 12th Floor _____ ▪

  Wilmington, DE  19801 _____

*Appellee/Cross Appellee

  1) Stephen S. Gray, Chapter 11 Trustee ___ ▪

Counsel for Appellee:

  Bruce Grohsgal, Esquire _____

  Pachulski Stang Ziehl & Jones, LLP _____

  919 North Market Street, 17th Floor _____

  Wilmington, DE  19801 _____

  2) Westernbank Puerto Rico _____

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?   ◉ Yes   ○ No

IFP Motion Filed by Appellant?   ○ Yes   ◉ No

Have Additional Appeals to the Same Order been Filed?   ○ Yes   ◉ No
    If so, has District Court assigned a Civil Action Number?   ○ Yes   ○ No   Civil Action # _____

Additional  Notes:

_____

  May 6, 2008 _____

Date

By: _Nancy L'Heureux_____

Deputy Clerk

_____

FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: __08-23_____
7/6/06